# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**SUSAN LLOYD,**

        **Plaintiff,**

    **v.**

**THOMAS POKORNY,** *et. al.*,

        **Defendants.**

**Case No. 2:20-cv-2928**

**JUDGE EDMUND A. SARGUS, JR.**

**Magistrate Judge Chelsey M. Vascura**

## OPINION AND ORDER

Defendants Portage County, Ohio ("Portage County"), Judge Thomas Pokorny ("Judge Pokorny"), Portage County Assistant Prosecutor Chris Meduri ("Prosecutor Meduri"), Portage County Clerk of Courts Jill Fankhauser[1] ("Clerk of Courts Fankhauser"), Portage County Courthouse ("Portage Courthouse"), and Portage County Court Reporter Toni DiNardo[2] ("Court Reporter DiNardo") (collectively the "Portage Defendants") have filed a Motion to Dismiss (ECF No. 28). Plaintiff Susan Lloyd ("Plaintiff") has responded (ECF No. 33) and the Portage Defendants have replied (ECF No. 34). For the reasons stated herein, the Portage Defendants' Motion to Dismiss (ECF No. 28) is **GRANTED in part and DENIED without prejudice in part**.

## I.

Plaintiff filed this action on September 23, 2019 in the Eastern District of Pennsylvania. (*See* Compl., ECF No. 1.) On June 5, 2020, the case was transferred to this Court. (*See* ECF No. 45.) Plaintiff sued the following Defendants: Judge Pokorny, Chief Justice Maureen

---

[1] Plaintiff sued the Portage County Clerk of Courts and Jill Fankhauser in her individual and official capacity. Because Ms. Fankhauser is the Portage County Clerk of Courts the Court will treat this as one defendant.

[2] The Court will refer to Clerk of Courts Fankhauser, Judge Pokorny, Court Reporter DiNardo, and Prosecutor Meduri together as the "Individual Portage Defendants."

O'Connor, the Supreme Court of Ohio, Scott Drexel, Amy Stone, the Ohio Office of the Disciplinary Counsel, Jason Whitacre, Scott Flynn, Flynn, Keith, and Flynn, LLC, Lindsay Molnar, David Perduk, Perduk and Associates Co., LLC, Prosecutor Meduri, the State of Ohio, Portage County, Portage Courthouse, Clerk of Courts Fankhauser, Tory Reeves, Court Reporter DiNardo, Joshua Thornsbery, and Michael Szabo (collectively "Defendants").  (*See* Compl. ¶¶ 4–25.)  Plaintiff sued the individual defendants in their personal and official capacities.  Plaintiff's Complaint was 129 pages.  (*See id.*)  On December 11, 2019, in response to extensive Federal Rule of Civil Procedure 12 briefing by several Defendants, Plaintiff amended her Complaint.  (*See* Am. Compl., ECF No. 23.)  The Amended Complaint is 155 pages.  (*See id.*)

Plaintiff's Amended Complaint includes 44 causes of action all related to a civil case filed in Portage County, Ohio, *Lloyd v. Thornsbery, et al.*, No. 2016CV00230 (the "*Thornsbery* case.") (*See id.*)  In the *Thornsbery* case Plaintiff sued a former neighbor and others who allegedly harassed her.  (*Id.* ¶ 27.)  The defendants ultimately prevailed, and Plaintiff's appeal is pending in the Ohio Eleventh District Court of Appeals.[3]

The allegations in the Amended Complaint include violations of the United States Constitution, violations of Ohio and federal criminal statutes, common law claims of abuse of process, malicious prosecution, and bribery, violations of the appellate "abuse of discretion" standard of review, violations of Ohio Sunshine laws, violations of various Federal Rules of Civil Procedure, violations of various Ohio local rules of civil procedure, violations of Ohio Rules of Professional Conduct, violations of the Ohio Rules of Superintendence of Ohio Courts, violations

---

[3] The Court may take judicial notice of the existence of prior judicial proceedings.  *Ascentium Capital, LLC v. Cent. USA Wireless, LLC*, No. 1:17-cv-744, 2018 U.S. Dist. LEXIS 161510, at *7 (S.D. Ohio Sept. 21, 2018).  The status of Plaintiff's appeal of the *Thornsbery* case can be found at https://services.portageco.com/eservices/home.page.2.

of the Fair Debt Collections Practices Act and Federal Trade Commission Debt Collection Practices, and unlawful discrimination based on sex and disability. (*Id.* ¶ 4.)

Specifically, with regards to the Portage Defendants, Plaintiff alleges the following:

- **Judge Pokorny**: Plaintiff alleges the Supreme Court of Ohio appointed Judge Pokorny to preside over the *Thornsbery* case. (*Id.* ¶ 5, 27, 31.) Plaintiff makes a series of allegations regarding Judge Pokorny's allegedly improper actions taken in this role. (*Id.* ¶ 2, 31–57, 245–46, 265–66, 291, 296, 314–16, 357–58, 440–43, 448–49, 451, 454, 457–58, 466–69, 473–77, 503–06, 516, 524, 538, 588, 614, 636, 640.) These actions include violating federal and local rules of procedure, violating federal and state statutes, violating Plaintiff's civil rights and participating in a conspiracy against Plaintiff. (*See id.*)

- **Portage Courthouse**: Plaintiff includes her allegations against Judge Pokorny as against the Portage Courthouse and also alleges the Portage Courthouse was prejudicial towards her. (*See id.* ¶ 2, 31–57, 143, 245–46, 265–66, 291, 296, 314–16, 357–58, 440–43, 448–49, 451, 454, 457–58, 466–69, 473–77, 503–06, 516, 524, 538, 588, 614, 636, 640.)

- **Clerk of Courts Fankhauser:** Plaintiff alleges Clerk of Courts Fankhauser violated the Ohio Sunshine laws by refusing to provide her with transcripts and audio recordings of the *Thornsbery* case. (*Id.* ¶ 20–21, 144–46.) Additionally, Plaintiff alleges Clerk of Courts Fankhauser took other improper actions in her role as the Clerk of Courts including violating Plaintiff's civil rights and participating in a conspiracy against Plaintiff. (*See id.*)

- **Court Reporter DiNardo**: Court Reporter DiNardo was the court reporter in the *Thornsbery* case. Plaintiff alleges Court Reporter DiNardo charged too high a rate for a transcript, refused to release a partial transcript of the proceedings, violated Plaintiff's civil rights and participated in a conspiracy against Plaintiff. (*Id.* ¶ 76, 150–51.)

- **Prosecutor Meduri**: Plaintiff alleges that Prosecutor Meduri violated the Ohio Sunshine laws when he failed to produce audio recordings from proceedings, violated the civil rights of non-party Brian Ames by interrupting him or objecting to his comments in a public meeting, and improperly declined to prosecute Joshua Thornsbery and Michael Szabo for the criminal activity they engaged in. (*Id.* ¶ 134–37, 151, 257–58, 267, 338.)

- **Portage County, Ohio**: Plaintiff alleges that whenever she tries to post on an official Portage County website, Portage County either blocks or deletes her posts which violates her civil rights. (*Id.* ¶ 139.) Plaintiff also alleges Portage County does not respond to her complaints about drug use in Portage County. (*Id.* ¶¶ 137, 140–41.)

Plaintiff's Amended Complaint asks for a series of relief which can be divided into three categories. First, Plaintiff asks for relief directly relating to the *Thornsbery* case and other state court actions including: providing Plaintiff with a new trial and a new judge, amending Judge

Pokorny's orders, dismissing the sanctions against Plaintiff ordered in the *Thornsbery* case, dismissal of the determination that Plaintiff is a vexatious litigator made in the *Thornsbery* case, Judge Pokorny's recusal from the *Thornsbery* case and "every other case in Ohio," reevaluation of Plaintiff's previously dismissed state court complaints, and transfer of the *Thornsbery* case out of Portage County, Ohio. (*See id.* ¶¶ 691–97.) Next, Plaintiff asks for the following injunctive relief: reevaluation of the criminal activity Plaintiff previously complained about, a public apology, restoration of Plaintiff's ability to post on Portage County and Ohio websites and social media, training for Ohio officials on the use of service dogs, an order prohibiting Defendants from violating other individuals' civil rights, disbarment of Defendants Jason Whitcare, Scott Flynn, Lindsay Molnar, David Perduk, Amy Stone, Chief Justice Maureen O'Connor, Judge Pokorny, and Troy Reeves, removal of Court Reporter DiNardo's court reporter license, and prosecution of Michael Szabo and Joshua Thornsbery for crimes including drug use and violence. (*See id.* ¶¶ 698–99, 701–03, 706–08.) Finally, Plaintiff asks for monetary relief including: $100,000 in actual and punitive damages, a fine imposed for violation of Plaintiff's civil rights, expenses for Plaintiff's relocation out of Portage County, and compensation from Mr. Szabo and Mr. Thornsbery for Plaintiff's financial loss as a result of their criminal behavior. (*See id.* ¶¶ 700, 704–05, 708.)

The Portage Defendants move to dismiss the claims against them for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted.[4] (Defs.' Mot. Dismiss at 10–21, ECF No. 28.)

---

[4] This motion was filed prior to the case's transfer to this Court. The Portage Defendants also argued the Eastern District of Pennsylvania lacked personal jurisdiction over them and the Eastern District of Pennsylvania was an improper venue. (Defs.' Mot. Dismiss at 6–10.) These arguments are now moot due to the transfer of the case. Similarly, Plaintiff's response asks the Court to transfer the case to the Southern District of Ohio. (*See* Pl.'s Resp. at 1.) This request is also moot.

## II.

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction.  Without subject matter jurisdiction, a federal court lacks authority to hear a case.  *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990).  "The *Rooker-Feldman* doctrine states that district courts lack subject-matter jurisdiction over challenges to state court determinations."  *Caddell v. Campbell*, No. 1:19-cv-91, 2020 U.S. Dist. LEXIS 24315, at *11 (S.D. Ohio Feb. 12, 2020); *see also Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013) ("Federal district courts do not stand as appellate courts for decisions of state courts.").  Federal courts must give full faith and credit to final judgments from state courts and lack jurisdiction to review those decisions.  *See* 28 U.S.C. § 1257.  The *Rooker-Feldman* doctrine applies to any case in which a plaintiff attempts to bring an impermissible attack on a state court judgment.  *Caddell*, 2020 U.S. Dist. LEXIS 24315 at *12.

Additionally, a court lacks subject-matter jurisdiction when the Eleventh Amendment to the United States Constitution grants sovereign immunity to the states against suits in federal court.[5]  *Seminole Tribe v. Florida*, 517 U.S. 44, 54–59 (1996).  "Under the Eleventh Amendment, federal courts lack jurisdiction to hear suits by private citizens against a state unless the State explicitly consents to the suit or unless Congress, pursuant to a valid exercise of power, indisputably consents its intent to abrogate state immunity."  *Bedford v. Kasich*, No. 2:11-cv-351, 2011 U.S. Dist. LEXIS 51903, at *19 (S.D. Ohio May 4, 2011) (citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)).  Additionally, "[a]n entity acting as an arm of the state enjoys Eleventh Amendment immunity from federal suit to the same extent as the state itself."

---

[5] While the Portage Defendants did not expressly raise Eleventh Amendment immunity with regards to all claims to which it is applicable, the Court may raise Eleventh Amendment immunity on its own. *Cady v. Arenac Cnty.*, 574 F.3d 334, 345 (6th Cir. 2009); *Yancey v. L.A. Superior Court*, No. 5:03-CV-122, 2004 U.S. Dist. LEXIS 330, at *9 (W.D. Mich. Jan. 2, 2004) (citing *Penhurst State*, 465 U.S. at 121).

*Yancey v. Los Angeles Superior Court*, No. 5:03-cv-122, 2004 U.S. Dist. LEXIS 330, at *10 (W.D. Mich. Jan. 2, 2004) (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 47–51 (1994)). Thus, Eleventh Amendment immunity extends to state officials sued in their official capacity.[6] *McCormick v. Miami Univ.*, No. 1:10-cv-345, 2011 U.S. Dist. LEXIS 48467, at *55–56 (S.D. Ohio May 5, 2011) (citing *Tucker v. Ohio Dep't Rehab. & Corr.*, 157 F.3d 453, 457 (6th Cir. 1998)). This is because a suit against a state official in his official capacity is not a suit against the official but rather a suit against the official's office and as such is no different than a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "[C]ounty officials who act in the capacity of a state official in enforcing state law that affords no discretion can be considered a state official and gain Eleventh Amendment Immunity." *Rice v. Leis*, No. 1:04-CV-00021, 2005 U.S. Dist. LEXIS 31369, at *12 (S.D. Ohio Nov. 29, 2005) (citing *Gottfried v. Med. Planning Servs. Inc.*, 280 F.3d 684, 892–92 (6th Cir. 2002)).

Eleventh Amendment immunity for state officials is limited, however, by the doctrine of *Ex Parte Young*, which the Supreme Court has described as applying "when a federal court commands a state official to do nothing more than from refrain from violating federal law." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 248 (2011). In these instances, courts apply a "legal fiction" that the state official is not the state for purposes of sovereign immunity. *See id.* As a result, when a state official is sued for violating federal law and only for prospective, non-monetary relief, such as an injunction, Eleventh Amendment immunity does not apply. *See Ex Parte Young*, 209 U.S. 123, 15–60 (1908); *Smith v. Oakland Cnty.*, 344 F. Supp. 2d 1030, 1056

---

[6] With respect to prosecutors, although a city or county prosecutor is an employee of such city of county, if the prosecutor is prosecuting state criminal law they are entitled to sovereign immunity and the suit against them cannot stand. *See Pusey v. City of Youngstown*, 11 F.3d 652, 657–58 (6th Cir. 1993); *Hertel v. Everett*, No. 2:18-cv-179, 2018 U.S. Dist. LEXIS 138573, at *11 (S.D. Ohio Aug. 16, 2018). Plaintiff alleges Prosecutor Meduri failed to prosecute state law such as physical assault and threatening murder. (Am. Compl. ¶ 137, 256–57.)

(E.D. Mich. 2004).  To evaluate whether the *Ex Parte Young* doctrine applies, the Court need only look to the allegations in the complaint, not the merits of the claim.  *Bedford*, 2011 U.S. Dist. LEXIS 51903 at *24 (citing *Verizon MD. Inc. v. United States*, 535 U.S. 635, 646 (2001)).  This doctrine does not apply to a state official's violation of state law, to which Eleventh Amendment immunity applies.  *Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *see also Ohioans Against Corp. Bailouts, LLC v. LaRose*, 417 F. Supp. 3d 962, 975–76 (S.D. Ohio Oct. 23, 2019) ("A claim that a state official violates state law in carrying out his or her official duties is a claim against the state, which is barred by the Eleventh Amendment, depriving a federal court of jurisdiction to hear the matter.").

### III.

The Portage Defendants argue that the Court lacks subject matter jurisdiction over the case because Plaintiff asks the Court to review the state court's decisions in the *Thornsbery* case. (Defs.' Mot. Dismiss at 10–11.)  Plaintiff contends she is entitled to bring this case because she "has exhausted all of her state remedies" and because of "the Supremacy Clause of the U.S. Constitution."  (Pl.'s Resp. at 14–15, 18–19, ECF No. 33.)

Plaintiff is asking for a series of different types of relief in this case some of which include: a new trial with a new judge for the *Thornsbery* case, amendment of Judge Pokorny's orders in the *Thornsbery* case, dismissal of the sanctions against Plaintiff which were ordered in the *Thornsbery* case, dismissal of the determination that Plaintiff is a vexatious litigator made in the *Thornsbery* case, recusal by Judge Pokorny from the *Thornsbery* case and "every other case in Ohio," reevaluation of Plaintiff's previously dismissed state court complaints, and transfer of the *Thornsbery* case out of Portage County, Ohio. (Am. Compl. ¶¶ 691–97.)  Additionally, many of Plaintiff's claims argue Defendants violated rules of procedure in the *Thornsbery* case, for

example, violations of the federal rules of civil procedure. (*See id.* ¶¶ 384–455, 465–96, 501–07, 529–30, 677–83.) With all of these requested forms of relief and alleged violations during the civil trial, Plaintiff attempts to attack a final state court judgment. This Court does not have subject matter jurisdiction over these claims under the *Rooker-Feldman* doctrine.[7] *See Caddell*, 2020 U.S. Dist. LEXIS 24315 at *11; *Hall*, 727 F.3d at 453; *see also Yancey*, 2004 U.S. Dist. LEXIS 330 at * 8–10 (finding the district court did not have subject matter jurisdiction due to the *Rooker-Feldman* doctrine in a case challenging a state court decision on various grounds including state law, federal law, and the Constitution); *McLynas v. Tennessee*, No. 3:06-cv-00186, 2007 U.S. Dist. LEXIS 7477, at *7 (E.D. Tenn. Feb. 2, 2007) (finding the court did not have jurisdiction to hear the portion of the claims previously heard, considered, and/or decided by the Knoxville state court). Thus, these claims are **DISMISSED**.[8]

Additionally, Portage Courthouse, a Portage Municipal Court, is immune from suit under the Eleventh Amendment.[9] The Court begins with the question of whether this defendant is an "arm of the state." *See Smith*, 344 F. Supp. 2d at 1053 (noting that for individuals to have Eleventh Amendment immunity they must be "arms of the state" or "alter egos" of the state). Plaintiff argues that the Eleventh Amendment does not protect municipalities. (Pl.'s Resp. at 14.) In the Sixth Circuit, however, Ohio municipal courts are arms of the state and thus entitled to Eleventh

---

[7] The Portage Defendants also ask the Court to abstain from deciding any claims against them in order respect the rightful independence of state governments. (Defs.' Mot. Dismiss at 12 (citing *R.R. Comm'n of Tex. v. Pullman*, 312 U.S. 496, 500–01 (1941).) The Court need not address this issue because it finds the *Rooker-Feldman* doctrine requires the Court to dismiss all claims that seek to attack a state court judgment.

[8] Plaintiff states in her introduction and conclusion that she would like her case stayed until her state court cases are complete. (Pl.'s Resp. at 1, 25.) Plaintiff provides no law as to why this is proper or how this would then allow the district court to rule in a way that would affect her state court judgment. This argument is without merit.

[9] Plaintiff is unclear as to whether she intends to sue the actual Portage Courthouse as a location or whether she intends to sue the Portage Municipal Court. This Section is applicable if she intends to sue the Portage Municipal Court where the *Thornsbery* case began.

Amendment immunity.[10]  *Cent. Ohio Alt. Program v. Ballinger*, No. 3:06CV01083, 2007 U.S. Dist. LEXIS 19551, at *10–11 (N.D. Ohio Mar. 20, 2007) ("In the Sixth Circuit, Ohio municipal courts are generally viewed as 'arms of the state' under the Eleventh Amendment."); *see also Foster v. Walsh*, 864 F.3d 416, 418–19 (6th Cir. 1988) ("The Akron Municipal Court is part of the Ohio state court system, established by the Ohio state legislature, . . . subject to the supervision of the Ohio Supreme Court, . . . may not be abolished by the city counsel, . . . [and] the employees of the Akron Municipal Court are not city employees subject to the authority of the Akron Civil Service Commission.").  Thus, the Portage Municipal Court is an arm of the state and thus, the suit is essentially a suit against the state of Ohio.  Ohio has not waived its immunity in federal court and Congress has not abrogated it.  *See Ohio v. Madeline Marie Nursing Homes # 1 & # 2*, 694 F.3d 449, 460 (6th Cir. 1982).  Thus, the Portage Courthouse has Eleventh Amendment immunity and all claims against it are **DISMISSED**.

Plaintiff also sues the Individual Portage Defendants in their official capacities for damages, which is in essence a suit is against their employers.  *See Will*, 491 U.S. at 7.  As stated above, the Court has found the Individual Portage Defendants' employer, the Portage Courthouse and/ or the State of Ohio, has Eleventh Amendment immunity.  Additionally, the Individual Portage Defendants were acting to enforce state law.  *See e.g.,* Ohio Rev. Code § 2301.50

---

[10] As our sister district, the Northern District of Ohio, has recognized "the law is somewhat unsettled in this area in the wake of rulings from the United States Supreme Court emphasizing the need to consider whether the state would be legally liable for any judgment in a sovereign-immunity analysis."  *Holt v. Bedford Mun. Court*, No.1:18 CV 2996, 2019 U.S Dist. LEXIS 47114, at *4 n.18 (N.D. Ohio Mar. 21, 2019) (citing *Alkire v. Irving*, 330 F.3d 802, 812 (6th Cir. 2003) (noting "[i]t is plain that the reasoning in *Mumford*, if not the result, is now incorrect in light of the Supreme Court's decision in [*Hess v. Port Authority Trans-Hudson Corp*., 513 U.S. 30 (1994),]" and remanding to the lower court to consider which entity would pay the damages)).  Nonetheless, the Sixth Circuit has not overruled its prior decisions finding the municipal courts in Ohio to be arms of the state for purposes of Eleventh Amendment immunity.  *Id.*; *see also Triplett v. Connor*, 109 F. App'x 94, 96 n.4 (6th Cir. 2004) (acknowledging "some doubt about the continued validity of *Mumford*'s reasoning," but holding "we have not, however, decided that *Mumford* was incorrect"); *Ward v. City of Norwalk*, 640 F. App'x 462, 465 (6th Cir. 2016) ("*Alkire's* emphasis on the source-of-payment factor does not change the conclusion that the Norwalk Municipal Court is an arm of the state for § 1983 and Eleventh Amendment purposes, and plaintiffs' money-damage claims against [defendants] in their official capacities are therefore barred.").

(providing the cost of court transcripts). Thus, the individual Portage Defendants have Eleventh

Amendment immunity for all claims against them in their official capacities for damages. *See e.g.,*

*S.L. v. Peirce Twp. Bd. of Trs.*, No. 1:07cv986, 2009 U.S. Dist. LEXIS 31367, at \*20–21 n.7 (S.D.

Ohio Mar. 26, 2009) ("[I]f [the] [p]laintiffs intended to sue [defendant] Judge Wyler in her official

capacity as a Common Pleas Court Judge, she would be entitled to Eleventh Amendment

Immunity."); *Doughty v. Tenn. Dep't of Children's Servs.*, No. 2016 U.S. Dist. LEXIS , at \*10

(E.D. Tenn. Apr. 28, 2016) ("Because the official-capacity claims against [the individual

defendants employed by a state agency] are in essence suits against [the state agency] itself—an

'arm of the state' entitled to Eleventh Amendment immunity—they too are barred."); *Novel v.*

*Zapor*, No. 2015 U.S. Dist. LEXIS 197441, at \*13 (S.D. Ohio Mar. 11, 2015) ("Judges of the Knox

County Common Pleas Court sued in their official capacities are arms of the state entitled to

Eleventh Amendment immunity."). Thus, the claims against the Individual Portage Defendants in

their official capacity for damages are **DISMISSED**.

      Finally, there remains Plaintiff's claims for prospective injunctive relief against the

Individual Portage Defendants.[11]  These claims involve allegations that the Individual Portage

Defendants are committing ongoing violations of both federal and state law.  For example, the

Amended Complaint alleges that Judge Pokorny is violating the "Sunshine laws by refusing

[Plaintiff] audio of the trial [sic]."  (Am. Compl. ¶ 47.)  To the extent that Plaintiff asks for

injunctive relief for violations of state law the individual State Defendants have Eleventh

Amendment immunity. *See Penhurst*, 465 U.S. at 106.  These claims are **DISMISSED**.  To the

extent Plaintiff asks for prospective injunctive relief for ongoing violations of federal law,

---

[11] The injunctive relief Plaintiff asks for requests that the Individual Portage Defendants take actions in their official capacities such as restoring Plaintiff's ability to write on public websites.  (Am. Compl. ¶ 701.)  Thus, the Court construes the claims against the Individual Portage Defendants as in their official capacities only.

however, Plaintiff's claims are not dismissed on the basis of lack of subject-matter jurisdiction. *Ex Parte Young*, 209 U.S. at 60.

In sum, the following claims are dismissed because this Court lacks subject-matter-jurisdiction: all claims that request interference with a state court judgment, all claims against the Portage Courthouse, and all claims against the Individual Portage Defendants in their official capacities for damages and for prospective injunctive relief arising out of violations of state law. There remain claims against the Individual Portage Defendants for prospective relief for ongoing violations of federal law and claims against them in their personal capacities for money damages and claims against Portage County.

## IV.

Federal Rule of Civil Procedure 12 authorizes dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To meet this standard, the complaint must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the non-moving party, accepting as true all of plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Nonetheless, the Court must read Rule 12(b)(6) in conjunction with Federal Rule of Civil Procedure 8(a), requiring a short and plain statement of the claim showing that the plaintiff is entitled to relief. *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 907 (S.D. Ohio 2013). Thus, the pleading's factual allegations, assumed to be true, must do more than create mere

speculation or suspicion of a legally cognizable claim; they must show entitlement to relief. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Further, "the tenet that courts must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 662. As such, while a plaintiff is not required to set forth detailed factual allegations at the pleading stage, a complaint must contain a basis upon which relief can be granted; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *See id.* at 679; Fed. R. Civ. P. 8(a).

Moreover, courts are called to "liberally construe pro se complaints and hold such complaints to a less stringent standard than pleadings prepared by attorneys." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012) (citing *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). However, such "lenient treatment has limits" and courts "should not have to guess at the nature of the claim asserted . . . ." *Id.* at 977 (internal quotations omitted).

## V.

The Portage Defendants move to dismiss the claims against them for the following reasons: (1) Portage County and Portage Courthouse are not entities capable of being sued; (2) Judge Pokorny is entitled to absolute immunity; (3) Court Reporter DiNardo is entitled to quasi-judicial immunity; (4) Plaintiff lacks standing to sue Prosecutor Meduri; (5) Claims against Clerk of Courts Fankhauser, Portage Courthouse, Court Reporter DiNardo, and Prosecutor Meduri are exclusively governed by the Ohio Rules of Superintendence; (6) Clerk of Courts Fankhauser, Prosecutor Meduri, and Court Reporter DiNardo are entitled to qualified immunity; and (7) Clerk of Courts Fankhauser, Prosecutor Meduri, and Court Reporter DiNardo are entitled to Ohio statutory immunity. (*See* Defs.' Mot. Dismiss at 15–21.)

12

1.  **Entities Capable of Being Sued**

The Portage Defendants argue that Portage County and Portage Courthouse are not entities capable of being sued. (Defs.' Mot. Dismiss at 15.) Plaintiff does not address this argument in her response.[12] As such, Plaintiff waives opposition to dismissal. *See Conrad v. Bank Nat'l Ass'n*, 391 F. Supp. 3d 780, 791–92 (S.D. Ohio June 19, 2019) ("[The plaintiff] does not refute [the defendant's] characterization of [the claim], nor does [the plaintiff] respond in any way to [the defendant's] argument that this claim should be dismissed. Thus, [the plaintiff] appears to concede this point and waives opposition to dismissal of this claim."); *see also Woods v. U.S. Bank Nat'l Ass'n*, No. 517CV2234, 2019 U.S. Dist. LEXIS 44901, at *6–7 (N.D. Ohio Mar. 19, 2019) ("A party waives opposition to an argument by failing to address it in her responsive brief . . . the [c]ourt is not required to consider the[] merits and may grant judgment in [the moving party's] favor."); *Ohio Star Transp., LLC v. Roadway Express, Inc.*, No. 2:09-cv-261, 2010 U.S. Dist. LEXIS 95764, at *10 (S.D. Ohio Sept. 14, 2010) ("[The defendant] raises this argument, but [the plaintiff] does not respond, thereby waiving its ability to challenge the argument and effectively conceding the point."). Even if Plaintiff had opposed the argument, the Portage Defendants' argument is well-taken.

"Absent express statutory authority, a court can neither sue nor be sued in its own right." *State ex rel. Cleveland Mun. Court v. Cleveland City Council*, 296 N.E.2d 544, 546 (Ohio 1973). "A court is merely a place in which justice is judicially administered. It is the exercise of judicial power, by the proper officer or officers, at a time and place appointed by law." *Todd v. United States*, 158 U.S. 278, 284 (1895). Similarly, a county is not sui juris and is not capable of being

---

[12] Plaintiff fails to respond to several of the Portage Defendants' arguments as to why the claims should be dismissed and instead spends the majority of her response to the motion to dismiss re-stating the factual allegations and the laws she believes were violated as she did in the Amended Complaint. (*See* Pl.'s Resp.)

sued because countries are held accountable through their representatives. *Hoskins v. Hamilton Cty. Juvenile Court*, No. 1:18-cv-305, 2018 U.S. Dist. LEXIS 183354, at *8 (S.D. Ohio Oct. 25, 2018); *McGuire v. Ameritech Servs.*, 253 F. Supp. 2d 988, 1015 (S.D. Ohio 2003).

Plaintiff has not indicated any express statutory grant to enable her to sue these entities. Portage County and the Portage Courthouse are both entities not capable of being sued. Thus, all claims against Portage County and the Portage Courthouse[13] are **DISMISSED**.

### 2. Absolute Judicial Immunity

The Portage Defendants argue that Judge Pokorny has absolute judicial immunity because he did not act in clear absence of jurisdiction and each of the challenged acts were judicial acts. (Defs.' Mot. Dismiss at 17.) Plaintiff argues that Judge Pokorny does not have absolute judicial immunity because he acted in absence of all jurisdiction as "a retired judge with no oath of office and improperly assigned." (Pl.'s Resp. at 10–11.) The Portage Defendants reply that while Plaintiff is incorrect and Judge Pokorny was correctly appointed to the case, even if he was not, it does not deprive him of his absolute immunity. (Reply Supp. Mot. Dismiss at 3–5, ECF No. 34.)

"As early as 1872, the [Supreme] Court recognized that it was 'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Stump v. Sparkmam*, 435 U.S. 349, 356 (1978) (quoting *Bradley v. Fischer*, 80 U.S. 335, 346 (1871)). Thus, judges cannot be held liable to civil actions for their judicial acts. *Id.* "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to

---

[13] The Court has already dismissed all claims against the Portage Courthouse under the Eleventh Amendment if the Plaintiff intended to sue the Portage Municipal Court. *See infra* Section III. This Section applies if Plaintiff intended to sue the actual courthouse.

liability only when he has acted in the clear absence of all jurisdiction." *Id.* (citing *Bradley*, 80 U.S. at 351).  Absolute judicial immunity applies when judges are sued for money damages. *See Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997).

When a municipal court judge disqualifies himself from a case without an affidavit having been filed against the judge, "the Chief justice of the Ohio Supreme Court possesses the exclusive authority to appoint another judge." *State ex rel. Kline v. Carroll*, 775 N.E.2d 517, 521 (Ohio 2002); *see also* Ohio Sup. R. 17(B); Ohio Const. art IV, § 5(A)(3).  This law makes clear that Judge Pokorny's appointment was valid.  Plaintiff claims, however, that Judge Pokorny was not allowed to sit for 6 months as a judge.  (*See* Compl. ¶¶ 31–32.)  Even if this were true, which Defendant contends it is not, the Sixth Circuit has addressed a similar situation and found that when there is a defect in the judicial appointment process, the judge continues to act with de facto authority for purposes of judicial immunity and therefore does not act in a clear absence of all jurisdiction. *See White v. Gerbitz*, 892 F.2d 457, 462 (6th Cir. 1989); *see also Williams v. Banner Buick, Inc.*, 574 N.E.2d 579, 584–85 (Ohio Ct. App. 1989) (finding irregularity in the appointment of the judge who rendered judgment made the judge a de facto acting municipal judge and the judgment not open to attack on that ground).

Thus, even if Plaintiff's contention is true and Judge Pokorny acted as a judge for longer than prescribed, he was still acting as a de facto judge and thus, for purposes of judicial immunity did not act in a clear absence of jurisdiction.  Additionally, the acts which Plaintiff complains about were all actions which Judge Pokorny took in connection with his role presiding over the *Thornsbery* case and therefore were judicial acts.  Judge Pokorny has absolute immunity.  Thus, all claims against Judge Pokorny in his individual capacity for damages are **DISMISSED**.

### 3. Quasi-Judicial Immunity

The Portage Defendants argue that Court Reporter DiNardo is entitled to quasi-judicial immunity because the actions Plaintiff sues him for were taken in connection with the *Thornsbery* case and were part of the judicial function. (Defs.' Mot. Dismiss at 18.) Plaintiff contends that Court Reporter DiNardo charged excess prices for transcripts and engaged in a verbal altercation with Plaintiff over the transcript, which were acts outside of his judicial duties, therefore he is without immunity. (Pl.'s Resp. at 13.)

Courts use a functional approach to determine when judicial officers are entitled to quasi-judicial immunity. *Forrester v. White*, 484 U.S. 219, 224 (1988). Under this functional approach, courts "examine the nature of the functions with which a particular official, [] has been lawfully entrusted, and [they] seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Id.* This quasi-judicial immunity only extends to defendants sued in their individual capacities. *See id.*; *Alkire*, 330 F. 3d at 810–11. This Court has previously applied quasi-judicial immunity to court reporters. *Morrow v. Igleburger*, 67 F.R.D. 675, 683–84 (S.D. Ohio 1974).

Plaintiff's allegations against Court Reporter DiNardo all involve his duties with regards to the transcripts in court cases. This function is closely tied to the judicial function and is one which if subjected to liability would negatively affect the exercise of this function. Therefore, Court Reporter DiNardo is immune from the claims in this case against him in his individual capacity for damages. These claims are **DISMISSED**.

### 4. Standing to Sue Prosecutors

The Portage Defendants argue that Plaintiff lacks standing to sue Prosecutor Meduri for failure to prosecute or any other actions related to his job as a prosecutor. (Defs.' Mot. Dismiss at

18–20.)  Plaintiff does not respond to this argument, and as such, waives opposition to dismissal on these grounds.  *Conrad*, 391 F. Supp. 3d at 791–92; *see also Woods*, 2019 U.S. Dist. LEXIS 4490 at *6–7; *Ohio Star Transp., LLC*, 2010 U.S. Dist. LEXIS 95764 at *10.  Even if Plaintiff did respond, the Portage Defendants' argument is well-taken.

Our sister district court has explained that "[i] is well established that a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Fulson v. Columbus*, 801 F. Supp. 1, 6 (N.D. Ohio 1992) (citing *Linda R. S. v. Richard D.,* 410 U.S. 614 (1973)).  "Thus, courts have generally declined to recognize standing on the part of victims of crimes to bring a § 1983 action based upon the lack of prosecution of others."  *Id.* (citing cases).  This is because a public official charged with the duty to prosecute or investigate a crime does not owe that duty to any one member of the public, and thus, no one member can compel that official to act.  *Id.*

Here, Plaintiff lacks standing to sue Prosecutor Meduri for failure to investigate or prosecute the alleged criminal activity of Thornsbery and others.[14]  Thus, all claims against Prosecutor Meduri for failure to prosecute are **DISMISSED**.

Additionally, Plaintiff alleges in her Amended Complaint that Prosecutor Meduri violated the law and the constitutional rights of non-party Brian Ames at a meeting when Prosecutor Meduri interrupted Mr. Ames.  (Am. Compl. ¶ 136.)  Defendant argues Plaintiff does not have standing to sue on behalf of Mr. Ames.  (Defs.' Mot. Dismiss at 19.)  "Ordinarily, one may not claim standing in this [c]ourt to vindicate the constitutional rights of some third party."  *Barrows v. Jackson*, 346

---

[14] Plaintiff also mentions 18 U.S.C. §§ 241, 242 in her Amended Complaint as related to the criminal actions Prosecutor Meduri failed to prosecute.  These claims are also dismissed because neither statute provides a private right of action.  *See United States v. Oguaji*, 76 F. App'x 579, 580 (6th Cir. 2003); *Moore v. City of Garfield Heights*, No. 1:12-cv-1700, 2020 U.S. Dist. Lexis 164911, at *25–26 (N.D. Ohio Nov. 16, 2012).  Similarly, Plaintiff sues for Dereliction of Duties under Ohio Revised Code 2921.44, another criminal statute without a private cause of action and thus, this claim is also dismissed.  *Boddie v. Landers*, No. 15AP-962, 2016 Ohio App. LEXIS 1274, at *10 (Ohio Ct. App. Mar. 31, 2016).

U.S. 249, 255 (1953). The Supreme Court has observed, however, "that its salutary rule against third-party standing is not absolute." *Smith v. Jefferson Cty. Bd. Sch. Comm'rs*, 641 F.3d 197, 207 (6th Cir. 2011) (citing *Kowalski v. Tesmer*, 543 U.S. 125 (2004)). Importantly for this case, in order to assert a claim on behalf of another person there must be a "hinderance" to the third party's "ability to protect his own interests." *Kowalski*, 543 U.S. at 130; *see also Smith*, 641 F.3d at 208–09 (finding no third-party standing because there was "no indication that the [third-parties] face[d] any obstacle in litigating their rights themselves"). Plaintiff has not alleged any hindrance on Mr. Ames' ability to protect himself and thus, does not have standing to bring claims on his behalf. This claim is **DISMISSED**.

### 5. Ohio Rules of Superintendence

The Portage Defendants argue that claims arising out of an alleged deprivation of a court transcript and audio recordings against Clerk of Courts Fankhauser, Portage Courthouse, Court Reporter DiNardo, and Prosecutor Meduri are exclusively governed by the Ohio Rules of Superintendence. (Defs.' Mot. Dismiss at 20–21.) Plaintiff does not respond to this argument in her response, and as such, waives opposition to dismissal on these grounds. *Conrad*, 391 F. Supp. 3d at 791–92; *see also Woods*, 2019 U.S. Dist. LEXIS 4490 at *6–7; *Ohio Star Transp., LLC*, 2010 U.S. Dist. LEXIS 95764 at *10. Even if Plaintiff did respond, the Portage Defendants' argument is well-taken.

The Ohio Rules of Superintendence regulate public access to court records and "are the *sole* vehicle for obtaining records in actions commenced after July 1, 2009." *State ex rel. Harris v. Pureval*, 121 N.E.3d 337, 345 (Ohio 2018) (emphasis in original) (citing Ohio R. of Superintendence 45(A)). Thus, the Ohio Public Records Act is inapplicable to claims over court records' requests. *See id.* Importantly, "a person aggrieved by the failure of a court or clerk of

courts to comply with the Rules of Superintendence regarding access to court records may pursue an action in mandamus" as their sole remedy. *Id.* at 345–46 (citing Ohio R. Superintendence 47(B)).

Plaintiff's claims against Clerk of Courts Fankhauser, Portage Courthouse, Court Reporter DiNardo, and Prosecutor Meduri include claims under the Sunshine Acts and Ohio Rules of Superintendence. This, however, is not a mandamus action, and thus, all of these claims are **DISMISSED**.

### 6. Qualified Immunity

The Portage Defendants argue that the Individual Portage Defendants are entitled to qualified immunity from any remaining constitutional claims. (Defs.' Mot. Dismiss at 21.) Plaintiff does not respond to this argument in her response, and as such, waives opposition to dismissal on these grounds. *Conrad*, 391 F. Supp. 3d at 791–92; *see also Woods*, 2019 U.S. Dist. LEXIS 4490 at *6–7; *Ohio Star Transp., LLC*, 2010 U.S. Dist. LEXIS 95764 at *10. Even if Plaintiff did respond, the Portage Defendants' argument is well-taken.

Government officials sued in their individual capacities "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Portage Defendants have raised the qualified immunity defense and, thus, it is now Plaintiffs' burden to establish first, that Defendants violated a constitutional right and, second, that the right was clearly established at the time the challenged conduct took place. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). In the Sixth Circuit, qualified immunity can be decided on a motion to dismiss. *See Brown v. Mohr*, No. 2:13-cv-0006, 2016 U.S. Dist. LEXIS 122292, at *36–37 (S.D. Ohio Sept. 9, 2016) (citing *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005)).

"To survive the motion to dismiss on qualified immunity grounds, the plaintiff must allege facts that 'plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right.'" *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)).  Plaintiff has not satisfied this burden.  Even if Plaintiff's Amended Complaint establishes that constitutional rights were violated, which is unclear, Plaintiff has not provided any law with which the Court can decide such violated law was clearly established at the time it occurred.  Thus, any remaining constitutional claims against the individual Portage Defendants are **DISMISSED**.[15]

### 7.  Statutory Immunity

The Portage Defendants argue that the Individual Portage Defendants are entitled to statutory immunity on any remaining statutory claims.  (Defs.' Mot. Dismiss at 21.)  Plaintiff does not respond to this argument in her response, and as such, waives opposition to dismissal on these grounds.  *Conrad*, 391 F. Supp. 3d at 791–92; *see also Woods*, 2019 U.S. Dist. LEXIS 4490 at *6–7; *Ohio Star Transp., LLC*, 2010 U.S. Dist. LEXIS 95764 at *10.  Even if Plaintiff did respond, the Portage Defendants' argument is well-taken.

Under Ohio law, political subdivisions and employees of political subdivisions are immune from actions to recover damages for injuries allegedly caused by any act or omission in connection with a government or propriety function provided their actions are not manifestly outside the scope of their responsibilities, malicious, in bath faith, wanton, or reckless.  Ohio Rev. Code § 2744.03;

---

[15] The Constitutional claims against the Portage Defendants in their individual capacities have been dismissed and thus, the Court need not address the Portage Defendants argument that some aspects of these claims are precluded by other cases.  (*See* Defs.' Mot. Dismiss at 13–15.)  Additionally, even if the Court were to consider this argument it is not clear that the Portage Defendants have provided enough detail about the previous cases that would allow the Court to find preclusion.

*Douglas v.* Swing, No: 1:10-cv-14, 2011 U.S. Dist. LEXIS 88496, at *31 (S.D. Ohio Aug. 10, 2011). The Portage Defendants claim that each act or omission the Individual Portage Defendants took were in connection with that individual's function in the government and no exceptions apply. Plaintiff does not argue otherwise. The Court agrees. Thus, any remaining statutory claims against the individual Portage Defendants are **DISMISSED**.

### 8. Conclusion

The Portage Defendants' motion to dismiss is **GRANTED** in that each of the specific claims the Portage Defendants asked for dismissal of are dismissed. As a result, all claims asking for a remedy that involves disturbing the state court judgment in the *Thornsbery* case are dismissed under the *Rooker-Feldman* doctrine. All claims against the Portage Courthouse, the Individual Portage Defendants in their official capacities for damages, and all claims against the Individual Portage Defendants in their official capacities for violations of state law are dismissed due to lack of subject-matter jurisdiction. All claims against Portage County are dismissed because these entities are not sui juris. All claims against Judge Pokorny in his individual capacity for damages are dismissed as a result of absolute immunity. All claims against Court Reporter DiNardo in his individual capacity for judicial acts are dismissed as a result of quasi-judicial immunity. All claims against Prosecutor Meduri for failure to prosecute or violation of Mr. Ames' rights are dismissed for lack of standing. All claims alleging a violation of the Sunshine laws are dismissed for these cannot be brought in this action. Finally, all remaining constitutional claims and statutory claims against the Individual Portage Defendants are dismissed because of qualified immunity and statutory immunity.

The motion to dismiss cannot be granted in its entirety, however, because the motion asks for every claim against the Portage Defendants to be dismissed but the Portage Defendants have

failed to ask for and justify dismissal of every claim. As a result of the *Ex Parte Young* doctrine described above, there remain claims against the Individual Portage Defendants in their official capacities for injunctive relief as a result of ongoing violations of federal law. Throughout Plaintiff's Complaint she alleges ongoing civil rights violations and as a remedy seeks: a public apology, restoration of her freedom of speech, an order preventing Defendants from violating other individuals' civil rights, and that Court Reporter DiNardo lose his license. (Am. Compl. ¶¶ 698, 701–03, 707.)

The Court will **DENY** without prejudice the motion to dismiss in regard to claims which the Portage Defendants did not present an argument for dismissal.[16]

### 9. Motion to Amend

Plaintiff's Response asks the Court to allow Plaintiff to file a second amended Complaint in the alternative to denying the motion to dismiss. (*See* Pl.'s Resp. at 25, ECF No. 33.) Plaintiff does not indicate, however, what amendment/s she would like to make. (*See id.*) The Court cannot evaluate the propriety of an amendment under Federal Rule of Civil Procedure 15 without knowledge of the amendment Plaintiff seeks to make. Thus, the Motion to amend is **DENIED.**

### VI.

For the reasons stated above, the Portage Defendants' Motion to Dismiss (ECF No. 28) is **GRANTED in part and DENIED without prejudice in part**. The Clerk is **DIRECTED** to terminate Portage County, Ohio and Portage County Courthouse from the lawsuit.

**IT IS SO ORDERED.**

| | |
|---|---|
| 8/3/2020 | s/Edmund A. Sargus, Jr. |
| **DATE** | **EDMUND A. SARGUS, JR.** |
| | **UNITED STATES DISTRICT JUDGE** |

---

[16] The Court believes it likely Plaintiff has not provided enough factual allegations to state a claim for the remaining claims. The Court cannot, however, sua sponte dismiss a claim for failure to state a claim without first giving Plaintiff notice and an opportunity to amend. *See Gooden v. City of Memphis*, 29 F. App'x 350, 352 (6th Cir. 2002).